1  WILLARD K. TOM
   General Counsel
2  ROBERT J. SCHROEDER
   Regional Director
3  ELEANOR DURHAM, Maryland Bar
   LAURA M. SOLIS, WA State Bar No. 36005
4  Federal Trade Commission
   915 Second Ave., Suite 2896
5  Seattle, WA 98174
   Telephone:  (206) 220-6350
6  Facsimile: (206) 220-6366
   edurham@ftc.gov
7  lsolis@ftc.gov

8  Attorneys for Plaintiffs

9

10         **IN THE UNITED STATES DISTRICT COURT**
           **FOR THE DISTRICT OF ARIZONA**
11

12

13  | Federal Trade Commission,    | Civil No. CV-12-2246-PHX-FJM |

14            Plaintiff,

15  vs.                            **COMPLAINT FOR**
                                   **PERMANENT INJUNCTION**
16  ELH Consulting, LLC, an Arizona Limited   **AND OTHER EQUITABLE**
    Liability Company, also d/b/a Proactive   **RELIEF**
17  Planning Solutions; Purchase Power Solutions,
    LLC, an Arizona Limited Liability Company;
18  Allied Corporate Connection, LLC, an Arizona
    Limited Liability Company; Complete
19  Financial Strategies, LLC, an Arizona Limited
    Liability Company; 3Point14 Consultants,
20  LLC, a Nevada Limited Liability Company,
    also d/b/a Elite Planning Group; Key Tech
21  Software Solutions, LLC, a Delaware Limited
    Liability Company, also d/b/a Key One
22  Solutions;

23  Emory L. Holley IV, a/k/a Jack Holley,
    individually and as the sole member of ELH
24  Consulting, LLC; Lisa Miller, individually and
    as the sole member of Allied Corporate
25  Connection, LLC, Complete Financial
    Strategies, LLC, and Purchase Power
26  Solutions, LLC; Rares Stelea, individually and
    as the sole member of 3Point14 Consultants,
27  LLC; and Justin Journay, individually and as
    the sole  member of Key Tech Software
28  Solutions, LLC,

              Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108, to obtain temporary, preliminary, and permanent injunctive relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Trade Regulation Rule entitled "Telemarketing Sales Rule" ("TSR"), 16 C.F.R. Part 310.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345, and 15 U.S.C. §§ 45(a), 53(b), 57b, 6102(c), and 6105(b).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by statute.  15 U.S.C. §§ 41-58.  The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), which prohibits unfair or deceptive acts or practices in or affecting commerce.  The FTC also enforces the Telemarketing Act, 15 U.S.C. §§ 6101-6108.  Pursuant to the Telemarketing Act, the FTC promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and abusive telemarketing acts or practices.

5.      The FTC is authorized to initiate federal district court proceedings, by its own attorneys, to enjoin violations of the FTC Act and the TSR and to secure such equitable relief as may be appropriate in each case, including

COMPLAINT - Page 2 of 22

1   rescission or reformation of contracts, restitution, the refund of monies paid, and

2   the disgorgement of ill-gotten monies.  15 U.S.C. §§ 53(b), 56(a)(2)(A),

3   56(a)(2)(B), 57b, 6102(c) and 6105(b).

4                           **DEFENDANTS**

5          6.     ELH Consulting, LLC ("ELH Consulting"), is an Arizona limited

6   liability company with its mailing address at 1753 E. Broadway Rd. #525, Tempe,

7   Arizona 85282, and its offices at 2655 W. Guadalupe Rd., Ste. 9, Mesa, Arizona

8   85202.  ELH Consulting has done business as Proactive Planning Solutions

9   ("Proactive").  ELH Consulting transacts or has transacted business in this district

10  and throughout the United States.

11         7.     Purchase Power Solutions, LLC ("Purchase Power"), is an Arizona

12  limited liability company with its registered address at 4050 W. Ray Rd. #17-155,

13  Chandler, Arizona 85226, and its mailing address at 3116 S. Mill St. # 283, Mesa,

14  Arizona 85282.  Purchase Power transacts or has transacted business in this district

15  and throughout the United States.

16         8.     Allied Corporate Connection, LLC ("Allied"), is an Arizona limited

17  liability company with its mailing address at 2023 W. Guadalupe Rd. #11-217,

18  Mesa, Arizona 85202, and its offices at 2655 W. Guadalupe Rd., Ste. 9, Mesa,

19  Arizona 85202.  Allied transacts or has transacted business in this district and

20  throughout the United States.

21         9.     Complete Financial Strategies, LLC ("Complete"), is an Arizona

22  limited liability company with its registered address at 1730 E. Warner Rd. # 10-

23  109, Tempe, Arizona 85284.  Complete transacts or has transacted business in this

24  district and throughout the United States.

25         10.    3Point14 Consultants, LLC ("3Point"), is a Nevada limited liability

26  company with its registered address at 6576 Goldensun Court, Las Vegas, Nevada

27  89108, and its mailing address at 1960 W. Ray Rd. #13-17, Chandler, Arizona

28

COMPLAINT - Page 3 of 22

1   85224.  3Point has done business as Elite Planning Group ("Elite"), which has its

2   mailing address at 315 W. Elliot Rd. #107-166, Tempe, Arizona 85284.  3Point

3   transacts or has transacted business in this district and throughout the United

4   States.

5         11.   Key Tech Software Solutions, LLC, ("Key Tech") is a Delaware

6   limited liability company with its registered address at 16192 Coastal Highway,

7   Lewes, Delaware 19958, and its mailing address at P.O. Box 360321, Strongsville,

8   Ohio 44136.  Key Tech has done business as Key One Solutions ("Key One"),

9   which has its mailing address at 7650 S. McClintock Dr. #103-119, Tempe,

10  Arizona 85284.  Key Tech transacts or has transacted business in this district and

11  throughout the United States.

12        12.   Emory L. Holley IV a/k/a Jack Holley ("Holley") is the sole member

13  of Defendant ELH Consulting and is general manager of Defendant Allied.  At all

14  times material to this Complaint, acting alone or in concert with others, he has

15  formulated, directed, controlled, had the authority to control, or participated in the

16  acts and practices set forth in this Complaint.  Holley resides in this district and, in

17  connection with the matters alleged herein, transacts or has transacted business in

18  this district and throughout the United States.

19        13.   Lisa Miller ("Miller") is the sole member of Defendants Allied,

20  Complete, and Purchase Power.  Miller has been permanently enjoined in

21  connection with <u>FTC v. Vector Direct Marketing, et al.</u>, CV04 0095 PHX SMM

22  (Stip. Final Order entered 06/20/04) from any violation of the TSR.  At all times

23  material to this Complaint, acting alone or in concert with others, she has

24  formulated, directed, controlled, had the authority to control, or participated in the

25  acts and practices set forth in this Complaint.  Miller resides in this district and, in

26  connection with the matters alleged herein, transacts or has transacted business in

27  this district and throughout the United States.

28

COMPLAINT - Page 4 of 22

14.     Rares Stelea ("Stelea") is the sole member of Defendant 3Point.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Stelea resides in Las Vegas, Nevada. In connection with the matters alleged herein, he transacts or has transacted business in this district and throughout the United States.

15.     Justin Journay (Journay") is the sole member of Defendant Key Tech.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Journay resides in Strongsville, Ohio. In connection with the matters alleged herein, he transacts or has transacted business in this district and throughout the United States.

16.     Defendants ELH Consulting, on its own behalf and also d/b/a Proactive, Purchase Power, Allied, and Complete have operated as a common enterprise while engaging in the deceptive acts and practices and other violations of law alleged below.  These Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, officers, managers, business functions, employees, and office locations, and that have commingled funds and engaged in a common scheme.  Because these Defendants have operated as a common enterprise, each of them is jointly and severally liable for the acts and practices alleged below.  Holley and Miller have formulated, directed, controlled, had the authority to control, or participated in the acts and practices of the Defendants that constitute the common enterprise.

## COMMERCE

17.     At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS PRACTICES

18.     The Defendants operate a tangled network of telemarketing companies and telemarketing service providers that have been active under various names at several locations since at least 2007. ELH Consulting, LLC; Purchase Power Solutions, LLC; Allied Corporate Connection, LLC; and Complete Financial Strategies, LLC; are owned and controlled by Lisa Miller and/or Emory Holley. Miller and Holley through these entities both deceptively telemarket credit card interest rate reduction services _and_ provide substantial assistance to third parties who deceptively telemarket such services. Defendants 3point14 Consultants, LLC, owned by Rares Stelea, and Key Tech Software Solutions, LLC, owned by Justin Journay, are two telemarketing companies that have been or are currently being assisted by Miller and Holley.

19.     Since at least December 2007, Defendants ELH Consulting, Purchase Power, Allied, Complete, Holley, and Miller have telemarketed credit card interest rate reduction services to consumers nationwide in the United States.

20.     Since at least March 2011, Defendant 3Point has telemarketed credit card interest rate reduction services to consumers nationwide in the United States.

21.     Since at least January 2012, Defendant Key Tech has telemarketed credit card interest rate reduction services to consumers nationwide in the United States.

22.     In many instances, Defendants initiate telemarketing calls using a telemarketing service that delivers prerecorded voice messages, known as "voice broadcasting" or "robocalling." The prerecorded messages offer consumers the purported opportunity to secure substantially lower credit card interest rates and instruct consumers to press a number on their phone to be connected to a live representative. When consumers press the number, they are connected to a live representative who works for Defendants.

COMPLAINT - Page 6 of 22

23.     Defendants also have marketed their programs via the Internet on several websites, including keyonesolutionsinc.com, proactiveplanningsolutions.com, theeliteplanninggroup.com, and purchasepowersolutionsinc.com.

24.     During telemarketing calls, Defendants often identify themselves as representatives of "Cardholder Services" or some other generic business name. Defendants claim to have the ability to reduce substantially consumers' credit card interest rates.  In many instances, Defendants claim that they can obtain very low interest rates, typically between 4.9% and 9.9% for consumers.  Defendants also often claim that their interest rate reduction services will provide substantial savings to consumers, typically at least $2500, in a short period of time, and will enable consumers to pay off their debt much faster, typically three to five times faster, without increasing their monthly payments.

25.     In numerous instances, Defendants guarantee that if consumers do not save the promised amount of money in a short time as a result of lowered credit card interest rates, consumers will receive a full refund of the cost of Defendants' services.

26.     In some instances, Defendants have guaranteed or represented a high likelihood of success in obtaining for consumers a 0% or very low interest credit card.

27.     Defendants charge consumers a fee ranging from $500 to $999 for their services.  Defendants typically place this charge on consumers' credit cards during or immediately following the telemarketing calls. Defendants typically represent that the amount of the fee will be quickly offset by savings achieved through reduced interest rates.

28.     After consumers pay Defendants' fee, Defendants usually send consumers forms to complete and return listing all of the consumers' credit card

1    account information and other sensitive personal information such as date of birth

2    and Social Security Number.

3         29.    In some instances, after consumers complete and return Defendants'

4    forms, Defendants initiate three-way telephone calls with the consumers and the

5    customer service departments of credit card companies that consumers listed on

6    the forms.  These three-way telephone calls merely consist of Defendants verbally

7    requesting (or prompting consumers to verbally request) that the credit card

8    companies reduce the consumers' credit card interest rates.  This is a task

9    consumers could easily perform themselves.  The credit card companies typically

10   decline the request, and the call ends.  These three-way telephone calls are often

11   the total extent of Defendants' credit card interest rate reduction services.

12        30.    In numerous instances, Defendants fail to provide consumers with

13   the significant reductions in credit card interest rates, new lower interest rate credit

14   accounts, and minimum savings that were promised during the initial telephone

15   calls, and they typically fail to provide any reduction in consumers' credit card

16   interest rates at all.  Consequently, consumers are not able to pay their credit card

17   debts faster than they could have without Defendants' service.

18        31.    Despite Defendants' failure to deliver on the promises made to

19   consumers, Defendants rarely refund the fee charged to consumers for purchasing

20   Defendants' credit card interest rate reduction services.

21        32.    While telemarketing their program, Defendants, acting directly or

22   through one or more intermediaries, have made numerous calls to telephone

23   numbers on the National Do Not Call Registry ("Registry"), as well as to

24   consumers who have previously asked Defendants not to call them again.  In some

25   instances, Defendants or their telemarketers also "spoof" their calls by transmitting

26   phony Caller Identification information so that call recipients do not know the

27   source of the calls.

28

COMPLAINT - Page 8 of 22

33.     In numerous instances, Defendants, acting directly or through one or more intermediaries, have initiated telemarketing calls that failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call: the identity of the seller; that the purpose of the call is to sell goods or services; or the nature of the goods or services.  In numerous instances since December 1, 2008, Defendants, acting directly or through one or more intermediaries, have initiated prerecorded telemarketing calls to consumers that failed to promptly make such disclosures, or to immediately thereafter disclose the mechanism for asserting a Do Not Call request.

34.     In numerous instances on or after September 1, 2009, Defendants, acting directly or through one or more intermediaries, made outbound prerecorded calls that delivered messages to induce the sale of goods or services when the persons to whom these telephone calls were made had not expressly agreed, in writing, to authorize the seller to place prerecorded calls to such persons.

35.     Defendants have called telephone numbers in various area codes without first paying the annual fee for access to the telephone numbers within such area codes that are included in the National Do Not Call Registry.

36.     Since at least September 2007, Defendants ELH Consulting, Purchase Power, Allied, Complete, Holley, and Miller have provided substantial assistance to Defendants 3Point and Key Tech and other telemarketers and sellers of credit card interest rate reduction services including, but not limited to, registration of website domains, establishment of mail drops, product fulfillment, and customer service.

## VIOLATIONS OF THE FTC ACT

37.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

38.     Misrepresentations or deceptive omissions of material fact constitute

1  deceptive acts or practices prohibited by Section 5(a) of the FTC Act.  15 U.S.C.

2  § 45(a).

3  ## COUNT ONE

4  ### Misrepresentations in Violation of Section 5

5      39.    In numerous instances, in connection with the advertising,

6  marketing, promotion, offering for sale, or sale of credit card interest rate

7  reduction services, Defendants have represented, directly or indirectly, expressly or

8  by implication, that:

9      A.    Consumers who purchase Defendants' credit card interest rate

10  reduction services will receive a 0% or low rate credit card or have their

11  credit card interest rates reduced substantially, including to as low as 4.9%

12  to 9.9%;

13      B.    Consumers who purchase Defendants' credit card interest rate

14  reduction services will save thousands of dollars in a short time as a result

15  of lowered credit card interest rates; and

16      C.    Consumers who purchase Defendants' credit card interest rate

17  reduction services will be able to pay off their debts much faster, typically

18  three to five times faster, as a result of lowered credit card interest rates.

19      40.    In truth and in fact, the representations set forth in Paragraph 39 of

20  this Complaint were false or not substantiated at the time the representations were

21  made.

22      41.    Therefore, Defendants' representations as set forth in Paragraph 39

23  of this Complaint are false or misleading and constitute deceptive acts or practices

24  in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

25  ## COUNT TWO

26  ### Refund Misrepresentations

27      42.    In numerous instances, in connection with the advertising,

28

COMPLAINT - Page 10 of 22

1   marketing, promotion, offering for sale, or sale of credit card interest rate

2   reduction services, Defendants have represented, directly or indirectly, expressly or

3   by implication, that Defendants will provide full refunds if consumers do not save

4   thousands of dollars in a short time as a result of lowered credit card interest rates.

5       43.    In truth and in fact, in numerous instances in which Defendants have

6   made the representation set forth in Paragraph 42 of this Complaint, Defendants do

7   not provide full refunds when consumers do not save thousands of dollars in a

8   short time as a result of lowered credit card interest rates.

9       44.    Therefore, Defendants' representation as set forth in Paragraph 42 of

10   this Complaint is false and misleading and constitutes a deceptive act or practice in

11   violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

12   **THE TELEMARKETING SALES RULE**

13       45.    Congress directed the FTC to prescribe rules prohibiting abusive and

14   deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15

15   U.S.C. §§ 6101-6108.  The FTC adopted the original Telemarketing Sales Rule in

16   1995, extensively amended it in 2003, and amended certain provisions thereafter.

17   16 C.F.R. Part 310.

18       46.    As amended, effective September 27, 2010, and October 27, 2010,

19   the TSR addresses the telemarketing of debt relief services.  The amendments

20   effective September 27, 2010, among other things, prohibit misrepresentations

21   about material aspects of debt relief services.  The amendments effective October

22   27, 2010, prohibit sellers and telemarketers from charging or collecting an advance

23   fee before renegotiating, settling, reducing, or otherwise altering consumers' debts.

24       47.    Defendants are "seller[s]" and/or "telemarketer[s]" engaged in

25   "telemarketing," and Defendants have initiated, or have caused telemarketers to

26   initiate, "outbound telephone call[s]" to consumers to induce the purchase of

27   goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(v),

28

COMPLAINT - Page 11 of 22

1  (aa), (cc), and (dd).  Defendants also are sellers or telemarketers of "debt relief

2  service[s]," as defined by the TSR, 16 C.F.R. § 310.2(m).

3       48.    Under the TSR, an "outbound telephone call" means a telephone call

4  initiated by a telemarketer to induce the purchase of goods or services or to solicit

5  a charitable contribution.  16 C.F.R. § 310.2(v).

6       49.    The TSR prohibits sellers and telemarketers from misrepresenting,

7  directly or by implication, in the sale of goods or services, any material aspect of

8  the performance, efficacy, nature, or central characteristics of the goods or services

9  that are the subject of a sales offer.  16 C.F.R. § 310.3(a)(2)(iii).

10       50.    As amended, effective September 27, 2010, the TSR prohibits sellers

11  and telemarketers from misrepresenting, directly or by implication, in the sale of

12  goods or services, any material aspect of any debt relief service.  16 C.F.R.

13  § 310.3(a)(2)(x).

14       51.    The TSR prohibits sellers and telemarketers from misrepresenting,

15  directly or by implication, in the sale of goods or services, any material aspect of

16  the nature or terms of the seller's refund, cancellation, exchange, or repurchase

17  policies.  16 C.F.R. § 310.3(a)(2)(iv).

18       52.    The TSR prohibits sellers and telemarketers from requesting or

19  receiving payment of any fee or consideration in advance of obtaining a loan or

20  other extension of credit when the seller or telemarketer has guaranteed or

21  represented a high likelihood of success in obtaining or arranging a loan or other

22  extension of credit for a person. 16 C.F.R. § 310.4(a)(4).

23       53.    As amended, effective October 27, 2010, the TSR prohibits sellers

24  and telemarketers from requesting or receiving payment of any fee or

25  consideration for any debt relief service until and unless:

26           A.    The seller or telemarketer has renegotiated, settled, reduced,

27           or otherwise altered the terms of at least one debt pursuant to a settlement

28

agreement, debt management plan, or other such valid contractual

agreement executed by the customer;

      B.    The consumer has made at least one payment pursuant to that

settlement agreement, debt management plan, or other valid contractual

agreement between the customer and the creditor or debt collector; and

      C.    To the extent that debts enrolled in a service are renegotiated,

settled, reduced, or otherwise altered individually, the fee or consideration

either (1) bears the same proportional relationship to the total fee for

renegotiating, settling, reducing, or altering the terms of the entire debt

balance as the individual debt amount bears to the entire debt amount; or (2)

is a percentage of the amount saved as a result of the renegotiation,

settlement, reduction, or alteration.

16 C.F.R. § 310.4(a)(5)(i).

54.    The TSR, as amended in 2003, established a "do-not-call" registry

(the "National Do Not Call Registry" or "Registry"), maintained by the FTC, of

consumers who do not wish to receive certain types of telemarketing calls.

Consumers can register their telephone numbers on the Registry without charge

either through a toll-free telephone call or over the Internet at www.donotcall.gov.

55.    Consumers who receive telemarketing calls to their registered

numbers can complain of Registry violations the same way they registered,

through a toll-free telephone call or over the Internet at www.donotcall.gov, or by

otherwise contacting law enforcement authorities.

56.    The FTC allows sellers, telemarketers, and other permitted

organizations to access the Registry over the Internet at

www.telemarketing.donotcall.gov, to pay any required fee(s), and to download the

numbers not to call.

57.    The TSR prohibits sellers and telemarketers from calling any

1  telephone number within a given area code unless the seller on whose behalf the

2  call is made has paid the annual fee for access to the telephone numbers within that

3  area code that are included in the Registry.  16 C.F.R. § 310.8.

4       58.   The TSR prohibits sellers and telemarketers from initiating an

5  outbound telephone call to telephone numbers on the Registry.  16 C.F.R.

6  § 310.4(b)(1)(iii)(B).

7       59.   The TSR prohibits sellers and telemarketers from initiating an

8  outbound telephone call to any person when that person previously has stated that

9  he or she does not wish to receive an outbound telephone call made by or on behalf

10  of the seller whose goods or services are being offered.  16 C.F.R.

11  § 310.4(b)(1)(iii)(A).

12       60.   The TSR requires that sellers and telemarketers transmit or cause to

13  be transmitted the telephone number and, when made available by the

14  telemarketer's carrier, the name of the telemarketer, to any caller identification

15  service in use by a recipient of a telemarketing call, or transmit the customer

16  service number of the seller on whose behalf the call is made and, when made

17  available by the telemarketer's seller, the name of the seller.  16 C.F.R.

18  § 310.4(a)(8).

19       61.   The TSR requires telemarketers in an outbound telephone call to

20  disclose truthfully, promptly, and in a clear and conspicuous manner, the following

21  information:

22            A.    The identity of the seller;

23            B.    That the purpose of the call is to sell goods or services; and

24            C.    The nature of the goods or services.

25  16 C.F.R. § 310.4(d).

26       62.   As amended, effective December 1, 2008, the TSR prohibits a

27  telemarketer from engaging, and a seller from causing a telemarketer to engage, in

28

COMPLAINT - Page 14 of 22

1    initiating an outbound telephone call that delivers a prerecorded message to induce

2    the purchase of any good or service unless the message promptly discloses:

3                    A.    The identity of the seller;

4                    B.    That the purpose of the call is to sell goods or services; and

5                    C.    The nature of the goods or services.

6    16 C.F.R. § 310.4(b)(1)(v)(B)(ii).

7        63.    As amended, effective September 1, 2009, the TSR prohibits

8    initiating a telephone call that delivers a prerecorded message to induce the

9    purchase of any good or service unless the seller has obtained from the recipient of

10   the call an express agreement, in writing, that evidences the willingness of the

11   recipient of the call to receive calls that deliver prerecorded messages by or on

12   behalf of a specific seller.  The express agreement must include the recipient's

13   telephone number and signature, must be obtained after a clear and conspicuous

14   disclosure that the purpose of the agreement is to authorize the seller to place

15   prerecorded calls to such person, and must be obtained after a clear and

16   conspicuous disclosure that the purpose of the agreement is to authorize the seller

17   to place prerecorded calls to such person, and must be obtained without requiring,

18   directly or indirectly, that the agreement be executed as a condition of purchasing

19   any good or service.  16 C.F.R. § 310.4(b)(1)(v)(A).

20       64.    Under the TSR, it is a deceptive telemarketing act or practice for a

21   person to provide substantial assistance or support to any seller or telemarketer

22   when that person knows or consciously avoids knowing that the seller or

23   telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d) or

24   § 310.4. 16 C.F.R. § 310.3(b).

25       65.    Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C.

26   § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation

27   of the TSR constitutes an unfair or deceptive act or practice in or affecting

28

COMPLAINT - Page 15 of 22

commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

## COUNT THREE

### Misrepresentations in Violation of the TSR

66.     In numerous instances, in connection with the telemarketing of goods and services, Defendants have misrepresented, directly or by implication, material aspects of the performance, efficacy, nature, or central characteristics of such goods and services, including, but not limited to, that:

A.     Consumers who purchase Defendants' credit card interest rate reduction services will receive a 0% or low rate credit card or have their credit card interest rates reduced substantially, including to as low as 4.9% to 9.9%;

B.     Consumers who purchase Defendants' credit card interest rate reduction services will save thousands of dollars in a short time as a result of lowered credit card interest rates; and

C.     Consumers who purchase Defendants' credit card interest rate reduction services will be able to pay off their debts much faster, typically three to five times faster, as a result of lowered credit card interest rates.

67.     Defendants' acts and practices, as described in Paragraph 66 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(2)(iii).

## COUNT FOUR

### Misrepresentations of Debt Relief Services in Violation of the TSR

68.     In numerous instances on or after September 27, 2010, in connection with the telemarketing of debt relief services, Defendants have misrepresented, directly or by implication, material aspects of the debt relief services, including, but not limited to, that:

COMPLAINT - Page 16 of 22

A.    Consumers who purchase Defendants' credit card interest rate reduction services will receive a 0% or low rate credit card or have their credit card interest rates reduced substantially, including to as low as 4.9% to 9.9%;

B.    Consumers who purchase Defendants' credit card interest rate reduction services will save thousands of dollars in a short time as a result of lowered credit card interest rates; and

C.    Consumers who purchase Defendants' credit card interest rate reduction services will be able to pay off their debts much faster, typically three to five times faster, as a result of lowered credit card interest rates.

69.    Defendants' acts and practices, as described in Paragraph 68 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(2)(x).

## COUNT FIVE

### Refund Misrepresentations in Violation of the TSR

70.    In numerous instances, in the course of telemarketing goods and services, Defendants have misrepresented, directly or by implication, that Defendants will provide full refunds if consumers do not save thousands of dollars in a short time as a result of lowered credit card interest rates.

71.    Defendants' acts and practices, as described in Paragraph 70 above, are deceptive telemarketing acts or practices that violate the TSR, 16 C.F.R. § 310.3(a)(2)(iv).

## COUNT SIX

### Advance Fee for New Lower Interest Rate Credit Card

72.    In numerous instances, in the course of telemarketing goods and services, Defendants have requested or received payment of a fee or consideration in advance of consumers obtaining an extension of credit when Defendants have

COMPLAINT - Page 17 of 22

1   guaranteed or represented a high likelihood of success in obtaining or arranging an

2   extension of credit for such consumers.

3        73.    Defendants' acts and practices, as described in Paragraph 72 above,

4   are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R.

5   § 310.4(a)(4).

6   **COUNT SEVEN**

7   **Charging or Receiving a Fee in Advance of Providing Debt Relief Services**

8        74.    In numerous instances on or after October 27, 2010, in the course of

9   telemarketing debt relief services, Defendants have requested or received payment

10  of a fee or consideration for a debt relief service before (a) they have renegotiated,

11  settled, reduced, or otherwise altered the terms of at least one debt pursuant to a

12  settlement agreement, debt management plan, or other such valid contractual

13  agreement executed by the customer; and (b) the customer has made at least one

14  payment pursuant to that agreement.

15       75.    Defendants' acts and practices, as described in Paragraph 74 above,

16  are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R.

17  § 310.4(a)(5)(i).

18  **COUNT EIGHT**

19  **Violating the National Do Not Call Registry**

20       76.    In numerous instances, in connection with telemarketing, Defendants

21  have engaged, or caused a telemarketer to engage, in initiating an outbound

22  telephone call to a person's telephone number on the National Do Not Call

23  Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

24  **COUNT NINE**

25  **Failing to Honor Do Not Call Requests**

26       77.    In numerous instances, in connection with telemarketing, Defendants

27  have engaged, or caused a telemarketer to engage, in initiating an outbound

28

COMPLAINT - Page 18 of 22

1  telephone call to a person who previously has stated that he or she does not wish to

2  receive an outbound telephone call made by or on behalf of Defendants, in

3  violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

**COUNT TEN**

**Failing to Transmit Caller Identification**

6  78.  In numerous instances, in connection with telemarketing, Defendants

7  have failed to transmit, or cause to be transmitted, the telephone number and name

8  of the telemarketer or of Defendants to any caller identification service in use by a

9  recipient of a telemarketing call, in violation of the TSR, 16 C.F.R. § 310.4(a)(8).

**COUNT ELEVEN**

**Initiating Unlawful Prerecorded Messages On or After September 1, 2009**

12  79.  In numerous instances on or after September 1, 2009, Defendants

13  have made, or caused others to make, outbound telephone calls that delivered

14  prerecorded messages to induce the purchase of goods or services in violation of

15  the TSR, 16 C.F.R. § 310.4(b)(1)(v).

**COUNT TWELVE**

**Failing to Make Required Oral Disclosures**

18  80.  In numerous instances, including on or after December 1, 2008, in

19  the course of telemarketing goods and services, Defendants have made, or caused

20  others to make, outbound telephone calls that deliver a prerecorded message in

21  which the telemarketer or message failed to disclose truthfully, promptly, and in a

22  clear and conspicuous manner to the person receiving the call:

A.  The identity of the seller;

B.  That the purpose of the call is to sell goods or services; and

C.  The nature of the goods or services.

81.  Defendants' acts and practices, as described in Paragraph 80 above,

are abusive telemarketing acts or practices that violate the TSR, 16 C.F.R.

COMPLAINT - Page 19 of 22

§§ 310.4(b)(1)(v)(B)(ii) and (d).

## COUNT THIRTEEN

### Failing to Pay National Registry Fees

82.     In numerous instances, in connection with telemarketing, Defendants have initiated, or caused others to initiate, an outbound telephone call to a telephone number within a given area code when Defendants had not, either directly or through another person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry, in violation of the TSR, 16 C.F.R. § 310.8.

## COUNT FOURTEEN

### Substantial Assistance

83.     Defendants ELH Consulting, Purchase Power, Allied, Complete, Holley, and Miller have provided substantial assistance or support including, but not limited to, registering website domain names, establishing mail drops, and providing fulfillment and customer service, to Defendants 3Point and Key Tech and other sellers or telemarketers, when they knew or consciously avoided knowing that 3Point, Key Tech, and other sellers or telemarketers were engaged in acts and practices that violate §§310.3(a), (c), or (d), or §310.4 of the TSR.

84.     Defendants ELH Consulting, Purchase Power, Allied, Complete, Holley, and Miller's substantial assistance, as described in Paragraph 83 above, is a deceptive telemarketing act or practice that violates the TSR, 16 C.F.R. §310.3(b).

## CONSUMER INJURY

85.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act and the TSR.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices.  Absent injunctive relief by this Court, Defendants are likely to

COMPLAINT - Page 20 of 22

1  continue to injure consumers, reap unjust enrichment, and harm the public interest.

2  ## THIS COURT'S POWER TO GRANT RELIEF

3  86.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this

4  Court to grant injunctive and such other relief as the Court may deem appropriate

5  to halt and redress violations of any provision of law enforced by the FTC.  The

6  Court, in the exercise of its equitable jurisdiction, may award ancillary relief,

7  including rescission or reformation of contracts, restitution, the refund of monies

8  paid, and the disgorgement of ill-gotten monies, to prevent and remedy any

9  violation of any provision of law enforced by the FTC.

10  87.     Section 19 of the FTC Act, 15 U.S.C. § 57b, and Section 6(b) of the

11  Telemarketing Act, 15 U.S.C. § 6105(b), authorize this Court to grant such relief

12  as the Court finds necessary to redress injury to consumers resulting from

13  Defendants' violations of the TSR, including the rescission or reformation of

14  contracts, and the refund of money.

15  ## PRAYER FOR RELIEF

16  WHEREFORE, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the

17  FTC Act, 15 U.S.C. § 53(b) and 57b, Section 6(b) of the Telemarketing Act, 15

18  U.S.C. § 6105(b), and the Court's own equitable powers, requests that the Court:

19  A.     Award Plaintiff such preliminary injunctive and ancillary relief as

20  may be necessary to avert the likelihood of consumer injury during the pendency

21  of this action and to preserve the possibility of effective final relief, including, but

22  not limited to, temporary and preliminary injunctions, an order freezing assets,

23  immediate access, and the appointment of a receiver;

24  B.     Enter a permanent injunction to prevent future violations of the FTC

25  Act and the TSR by Defendants;

26  C.     Award such relief as the Court finds necessary to redress injury to

27  consumers resulting from Defendants' violations of the FTC Act and the TSR,

28

COMPLAINT - Page 21 of 22

1  including, but not limited to, rescission or reformation of contracts, restitution, the

2  refund of monies paid, and the disgorgement of ill-gotten monies; and

3       D.       Award Plaintiff the costs of bringing this action, as well as such

4  other and additional relief as the Court may determine to be just and proper.

5

6                                    Respectfully Submitted,

7                                    WILLARD K. TOM
                                     General Counsel
8                                    ROBERT J. SCHROEDER
                                     Regional Director
9

10  Dated: *10/17/12*

11                                   ELEANOR DURHAM
                                     LAURA M. SOLIS
12
                                     Attorneys for Plaintiff
13                                   FEDERAL TRADE COMMISSION

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT - Page 22 of 22