**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Federal Trade Commission, | No. CV 12-2246-PHX-JAT |
| Plaintiff, | |
| vs. | ***EX PARTE* TEMPORARY RESTRAINING ORDER WITH ASSET FREEZE, APPOINTMENT OF A TEMPORARY RECEIVER, IMMEDIATE ACCESS TO BUSINESS PREMISES, LIMITED EXPEDITED DISCOVERY, AND AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE** |
| ELH Consulting, LLC, an Arizona Limited Liability Company, also d/b/a Proactive Planning Solutions; Purchase Power Solutions, LLC, an Arizona Limited Liability Company; Allied Corporate Connection, LLC, an Arizona Limited Liability Company; Complete Financial Strategies, LLC, an Arizona Limited Liability Company; 3Point14 Consultants, LLC, a Nevada Limited Liability Company, also d/b/a Elite Planning Group; Key Tech Software Solutions, LLC, a Delaware Limited Liability Company, also d/b/a Key One Solutions;  Emory L. Holley IV, a/k/a Jack Holley, individually and as the sole member of ELH Consulting, LLC; Lisa Miller, individually and as the sole member of Allied Corporate Connection, LLC, Complete Financial Strategies, LLC, and Purchase Power Solutions, LLC; Rares Stelea, individually and as the sole member of 3Point14 Consultants, LLC; and Justin Journay, individually and as the sole member of Key Tech Software Solutions, LLC, | **UNDER SEAL** |
| Defendants. | |

Plaintiff Federal Trade Commission ("FTC"), pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act

("Telemarketing Act"), 15 U.S.C. § 6101 *et seq.,* has filed a complaint seeking preliminary and permanent injunctive relief, and other equitable relief, including restitution for injured consumers and disgorgement of ill-gotten gains for Defendants' acts and practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. 45(a), and the Telemarketing Sales Rule, 16 C.F.R. Part 310, in connection with the telemarketing and sale of debt relief services, and has moved for an *ex parte* Temporary Restraining Order ("TRO") and other relief pursuant to Rule 65 of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 65.

## FINDINGS OF FACT

This Court, having considered the FTC's complaint, the TRO motion, and all attached declarations, exhibits, and memorandum of law filed in support, finds that:

1.      This Court has jurisdiction over the subject matter of this case, there is good cause to believe it will have jurisdiction over all the parties hereto, and venue in this district is proper.

2.      There is good cause to believe that ELH Consulting, LLC, also d/b/a Proactive Planning Solutions; Purchase Power Solutions, LLC; Allied Corporate Connection, LLC; Complete Financial Strategies, LLC; 3Point14 Consultants, LLC, also d/b/a Elite Planning Group; Key Tech Software Solutions, LLC, also d/b/a Key One Solutions; Emory L. Holley IV a/k/a Jack Holley; Lisa Miller; Rares Stelea; and Justin Journay (collectively referred to as "Defendants") have engaged in, and are likely to continue to engage in, acts and practices that violate Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), as well as various provisions of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, and that the FTC is therefore likely to prevail on the merits of this action.

3.      There is good cause to believe that consumers will suffer immediate and continuing harm from Defendants' ongoing violations of Section 5(a) of the FTC Act and the TSR unless Defendants are restrained and enjoined by Order of this Court.

4.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution and disgorgement of ill-gotten gains will occur from the sale, transfer, dissipation, or concealment by Defendants of their assets or business records unless Defendants are immediately restrained and enjoyed by Order of this Court; and that in accordance with Fed. R. Civ. P. 65(b), the interest of justice requires that the FTC's Motion be heard *ex parte* without prior notice to Defendants.  Therefore, there is good cause for relieving the FTC of the duty to provide Defendants with prior notice of the FTC's Motion.

5.     Good cause exists for appointing a temporary receiver over ELH Consulting, LLC also d/b/a Proactive Planning Solutions; Purchase Power Solutions, LLC; Allied Corporate Connection, LLC; and Complete Financial Strategies, LLC, and for permitting the FTC immediate access to those Defendants' business premises, and permitting the FTC to take expedited discovery.

6.     Weighing the equities and considering FTC's likelihood of ultimate success, a Temporary Restraining Order with asset freeze and other equitable relief is in the public interest.

7.     No security is required of any agency of the United States for issuance of a restraining order. Fed. R.Civ. P. 65(c).

**DEFINITIONS**

For purposes of this Temporary Restraining Order ("Order"), the following definitions shall apply:

1.     **"Asset" or "Assets"** means legal or equitable interest in, right to, or claim to any real, personal, or intellectual property of any Defendant, or held for the benefit of any Defendant, wherever located, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, contracts, mail or other deliveries, shares of stock, commodities, futures, inventory, checks, notes, accounts, credits, receivables (as those terms are

defined in the Uniform Commercial Code), cash, and trusts, including, but not limited to, any trust held for the benefit of any Defendant, any of the Individual Defendants' minor children, or any of the Individual Defendants' spouses, and shall include both existing assets and assets acquired after the date of entry of this Order.

2.      "**Assisting others**" includes, but is not limited to: (a) performing customer service functions, including but not limited to, receiving or responding to consumer complaints; (b) formulating or providing, or arranging for the formulation or provision of, any advertising or marketing material, including, but not limited to, any telephone script, direct mail solicitation, or the design, text, or use of images of any Internet website, email, or other electronic communication; (c) formulating or providing, or arranging for the formulation or provision of, any marketing support material or service, including but not limited to, web or Internet Protocol addresses or domain name registration of any Internet websites, affiliate marketing services, or media placement services; (d) formulating or providing, or arranging for the formulation or provision of, any material sent to consumers, including but not limited to, any form, pamphlet, brochure, or software; (e) shipping or arranging for the shipping of any material to consumers; (f) providing or arranging for the provision of mail drops; (g) providing financial consultant services, including but not limited to, offering any advice to consumers in connection with any debt relief product or service, or referring consumers to any third party in connection with any debt relief product or service; (h) providing names, or assisting in the generation of, potential customers; and (i) performing marketing, billing, or payment services of any kind.

3.      "**Consumer**" means any person.

4.      "**Corporate Defendants**" means ELH Consulting, LLC; Purchase Power Solutions, LLC; Allied Corporate Connection, LLC; Complete Financial Strategies, LLC; 3Point14 Consultants, LLC; and Key Tech Software, Solutions, LLC.

5.     "**Customer**" means any person who has paid, or may be required to pay, for products, services, plans, or programs offered for sale or sold by any other person.

6..     "**Debt relief product or service**"means any product, service, plan, or program represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt or obligation, between a person and one or more unsecured creditors or debt collectors, including but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

7.     "**Defendants**" means the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

8.     "**Document**" and "**Electronically Stored Information ("ESI")**" is synonymous in meaning and equal in scope to the usage of the terms in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, digital records, and other data compilations from which information can be obtained and translated, if necessary, into reasonably usable form through detection devices. A draft or nonidentical copy is a separate Document or ESI within the meaning of the terms.

9.     "**Financial Institution**" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

10.     "**Individual Defendants**" means Emory L. Holley IV, Lisa Miller, Rares Stelea, and Justin Journay.

11.     "**Material**" means likely to affect a person's choice of, or conduct regarding, goods or services.

12.     "**National Do Not Call Registry**" means the National Do Not Call registry, which is the "do-not-call" registry maintained by the FTC pursuant to 16 C.F.R. § 310.4(b0(1)(iii)(B).

13.    "**Person**" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

14.    "**Receivership Defendants**" means ELH Consulting, LLC; Purchase Power Solutions, LLC; Allied Corporate Connection, LLC; and Complete Financial Strategies, LLC, and their successors, assigns, affiliates, or subsidiaries, and each of them by whatever names each might be known, provided that the Receiver has reason to believe they are owned or controlled in whole or in part by any of the Defendants.

15.    "**Telemarketer**" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(bb).

16.    "**Telemarketing**" means a plan, program, or campaign (whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310), which is conducted to induce the purchase of goods or services or a charitable contribution by use of one or more telephones.

17.    The terms "**and**" and "**or**" shall be construed conjunctively or disjunctively as necessary to make the applicable phrase or sentence inclusive rather than exclusive.

1

**ORDER**

2

**IT IS ORDERED** granting (Doc. 4) as follows:

3

### I.  PROHIBITED REPRESENTATIONS

4

**IT IS ORDERED** that Defendants and their officers, agents, servants,

5

employees, and attorneys, and all other persons in active concert or participation

6

with any of them, who receive actual notice of this Order by personal service or

7

otherwise, whether acting directly or through any corporation, subsidiary,

8

division, or other device, in connection with the advertising, marketing,

9

promotion, offering for sale, or sale of any debt relief product or service, are

10

hereby temporarily restrained and enjoined from misrepresenting, or assisting

11

others who are misrepresenting, expressly or by implication, any material fact,

12

including, but not limited to the following:

13

A.    Consumers who purchase Defendants' debt relief products or

14

services will receive a 0% or low rate credit card or have their credit card interest

15

rates reduced substantially;

16

B.    Consumers who purchase Defendants' debt relief products or

17

services will save thousands of dollars in a short time as a result of lowered credit

18

card interest rates;

19

C.    Consumers who purchase Defendants' debt relief products or

20

services will be able to pay off their debts much faster as a result of lowered credit

21

card interest rates; and

22

D.    Defendants will provide refunds if consumers do not save a

23

significant amount of money as a result of lowered credit card interest rates.

24

### II.  RESTRICTIONS ON TELEMARKETING

25

**IT IS FURTHER ORDERED** that Defendants and their officers, agents,

26

servants, employees, and attorneys, and all other persons in active concert or

27

participation with any of them, who receive actual notice of this Order by personal

28

service or otherwise, whether acting directly or through any corporation,

subsidiary, division, or other device, in connection with the telemarketing of any

product or service, are hereby temporarily restrained and enjoined from:

A.    Requesting or receiving payment of fees or consideration for debt relief products or services before (1) they have renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; and (2) the customer has made at least one payment pursuant to that agreement;

B.    Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining a loan or other extension of credit;

C.    Initiating or causing others to initiate, an outbound telephone call to a person's telephone number on the National Do Not Call registry;

D.    Initiating or causing others to initiate, outbound telephone calls that fail to transmit the telephone number and name of the telemarketer or seller to any caller identification service in use by the recipient of a telemarketing call;

E.    Making or causing others to make, outbound telephone calls that deliver prerecorded messages to induce the purchase of goods or services when the persons to whom these outbound calls were made has not signed an express agreement, in writing, authorizing the seller to place prerecorded calls to such persons;

F.    Making or causing others to make, outbound telephone calls that deliver a prerecorded message in which the telemarketer or message fails to disclose truthfully, and promptly, and in a clear and conspicuous manner to the person receiving the call: (1) the identity of the seller; (2) that the purpose of the call is to sell goods and services; and (3) the nature of the goods and services;

G.    Making or causing others to make, outbound telephone calls to a person who previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or

services are being offered;

H.   Initiating or causing others to initiate, outbound telephone calls to a telephone number within a given area code when the seller has not, either directly or through another person, paid the required annual fee for access to the telephone numbers within that area code that are included in the National Do Not Call Registry;

I.   Assisting any seller or telemarketer who engages in practices that violate 16 C.F.R. §§ 310.3(a), (c), or (d), or § 310.4.

**III.  PRESERVATION OF RECORDS AND TANGIBLE THINGS**

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and those persons or in active concert or participation with them who receive actual notice of this Order by personal service, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby temporarily restrained and enjoined from destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents or records that relate to the business practices, or business or personal finances, of Defendants, or any entity directly or indirectly under the control of Defendants.

**IV.  DISABLEMENT OF WEBSITES AND PRESERVATION OF ELECTRONIC RECORDS**

**IT IS FURTHER ORDERED** that, immediately upon service of the Order upon them, (1) any person hosting any Internet website for, or on behalf of, any Defendant, and (2) Defendants and their officers, agents, servants, employees, and attorneys, and those persons or entities in active concert or participation with any of them who receive actual notice of this Order by personal service, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, shall:

A.   Immediately do whatever is necessary to ensure that any Internet website used by Defendants for the advertising, marketing, promotion, offering

1   for sale, or sale of any debt relief product or service, including, but not limited to
2   www.elhconsulting.com;   www.proactiveplanningsolutions.com;
3   www.proactiveplanningsolutions.info;   www.proactiveplanningsolutions.biz;
4   www.proactiveplanningsolutions.net;   www.firstsecuremanagment.com;
5   www.completefinancialstrategiesonline.com; www.theeliteplanninggroup.com;
6   w w w . f i n a n c i a l m a n a g e m e n t p a r t n e r s i n c . c o m ;
7   www.consumerreliefsolutionsinc.com;   www.purchasepowersolutionsinc.com;
8   www.keyonesolutionsinc.com,   www.nationalbankcardmoniter.com;
9   www.nationalbankcardmonitorinc.com; and www.alliedcorporateconnection.com,
10  cannot be accessed by the public;

11      B.      Prevent the destruction or erasure of any Internet website used by
12  Defendants for the advertising, marketing, promotion, offering for sale, or sale of
13  any debt relief product or service, by preserving such website in the format in
14  which it is maintained currently; and

15      C.      Immediately notify in writing counsel for the FTC of any other
16  Internet website operated or controlled by any Defendant not listed in Subsection
17  V.A above.

18  **V. SUSPENSION OF INTERNET DOMAIN NAME REGISTRATIONS**

19      **IT IS FURTHER ORDERED** that, any domain name registrar shall
20  suspend the registration of any Internet website used by Defendants for the
21  advertising, marketing, promotion, offering for sale, or sale of any debt relief
22  product or service, including, but not limited to, www.elhconsulting.com;
23  www.proactiveplanningsolutions.com;   www.proactiveplanningsolutions.info;
24  www.proactiveplanningsolutions.biz;   www.proactiveplanningsolutions.net;
25  www.firstsecuremanagment.com; www.completefinancialstrategiesonline.com;
26  www.theeliteplanninggroup.com;   www.financialmanagementpartnersinc.com;
27  www.consumerreliefsolutionsinc.com;   www.purchasepowersolutionsinc.com;
28  www.keyonesolutionsinc.com,   www.nationalbankcardmoniter.com;
    www.nationalbankcardmonitorinc.com, and www.alliedcorporateconnection.com,

1  and provide immediate notice to counsel for the FTC of any other Internet domain

2  names registered or controlled by any Defendants.

3  ### VI.  ASSET FREEZE

4  **IT IS FURTHER ORDERED** that Defendants, and their officers, agents,

5  servants, employees, and attorneys, and all persons or entities directly or indirectly

6  under the control of any of them, including any financial institution, and all other

7  persons or entities in active concert or participation with any of them who receive

8  actual notice of this Order by personal service, facsimile transmission, email, or

9  otherwise, are hereby temporarily restrained and enjoined from directly or

10  indirectly:

11  A.  Selling, liquidating, assigning, transferring, converting, loaning,

12  hypothecating, disbursing, gifting, conveying, encumbering, pledging, concealing,

13  dissipating, spending, withdrawing, or otherwise disposing of any funds, real or

14  personal property, or other assets or any interest therein, wherever located,

15  including any assets outside the territorial United States, that are: (1) in the actual

16  or constructive possession of any Defendant; (2) owned or controlled by, or held,

17  in whole or in part for the benefit of, or subject to access by, or belonging to, any

18  Defendant; or (3) in the actual or constructive possession of, or owned or

19  controlled by, or subject to access by, or belong to, any corporation, partnership,

20  trust, or other entity directly or indirectly owned, managed, or under the control

21  of any Defendant;

22  B.  Opening, or causing to be opened, any safe deposit boxes titled in

23  the name of any Defendant, or subject to access by any Defendant;

24  C.  Incurring charges on any credit card, stored value card, debit card,

25  or charge card issued in the name, singly or jointly, of any Defendant or any other

26  entity directly or indirectly owned, managed, or controlled by any Defendant;

27  D.  Obtaining a personal or secured loan for or on behalf of any

28  Defendant;

E.  Incurring liens or encumbrances on real property, personal property

or other assets in the name, singly or jointly, of any Defendant; and

F.      Cashing any checks from consumers, clients, or customers of any Defendant;

G.      The funds, property, and assets affected by this Section shall include: (a) all assets of each Defendant as of the time this Order is entered, including, without limitation, accounts held by ELH Consulting, LLC, also d/b/a Proactive Planning Solutions; Purchase Power Solutions, LLC; Allied Corporate Connection, LLC; Complete Financial Strategies, LLC; 3Point14 Consultants, LLC, also d/b/a Elite Planning Group; Key Tech Software Solutions, LLC, also d/b/a Key One Solutions; Emory L. Holley IV a/k/a/ Jack Holley; Lisa Miller; Rares Stelea; and Justin Journay, and (b) those assets obtained or received after entry of this Order that are derived from the actions alleged in Plaintiff's Complaint.   This Section does not prohibit transfers to the Receiver, as specifically required in Section XIV of this Order.

## VII.  RETENTION OF ASSETS AND RECORDS BY THIRD PARTIES

**IT IS FURTHER ORDERED** that, any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VI above, or has held, controlled, or maintained any such account, document, electronically stored information, or asset at any time since January 1, 2010, shall:

A.      Hold, preserve, and retain within such entity's or person's control, and prohibit the withdrawal, removal, alteration, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of such account, document, electronically stored information, or asset held by or under such entity's or person's control, except as

directed by further order of the Court or as directed in writing by the Receiver regarding accounts, documents, or assets held in the name of or benefit of any Receivership Defendant;

      B.    Provide the Receiver, the Receiver's agents, the FTC, and the FTC's agents immediate access to electronically stored information stored, hosted, or otherwise maintained on behalf of Defendants for forensic imaging;

      C.    Deny access to any safe deposit boxes that are either titled in the name, individually or jointly, or subject to access by, any Defendant or other party subject to Section VI above;

      D.    Provide to counsel for the FTC and the Receiver, within three (3) business days, after being served with a copy of this Order, a certified statement setting forth:

      1.    the identification of each account or asset titled in the name, individually or jointly, or held on behalf of or for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VI above, whether in whole or in part;

      2.    the balance of each such account, or a description of the nature and value of such asset, as of the close of business on the day on which this Order is served;

      3.    the identification of any safe deposit box that is either titled in the name of, individually or jointly, or is otherwise subject to access or control by, any Defendant or other party subject to Section VI above, whether in whole or in part; and

      4.    if the account, safe deposit box, or other asset has been closed or removed, the date closed or removed, the balance on said date, and the name or the person or entity to whom such account or other asset was remitted;

5.     Provide to counsel for the FTC and the Receiver, within three (3) business days after being served with a request, copies of all documents pertaining to such account or asset, including, but not limited to, originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; provided that such institution or custodian may charge a reasonable fee; and

6.     Cooperate with all reasonable requests of the Receiver relating to this Order's implementation;

7.     The accounts subject to this provision include: (a) all assets of each Defendant deposited as of the time this Order is entered, and (b) those assets deposited after entry of this Order that are derived from the actions alleged in Plaintiff's Complaint.  This Section does not prohibit transfers to the Receiver, as specifically required in Section XIV of this Order; and

8.     The FTC is granted leave, pursuant to Fed. R. Civ. P. 45, to subpoena documents immediately from any financial or brokerage institution, business entity, electronic data host, or person served with a copy of this Order that holds, controls, or maintains custody of any account, document, electronically stored information, or asset of, on behalf of, in the name of, for the benefit of, subject to withdrawal by, subject to access or use by, or under the signatory power of any Defendant or other party subject to Section VI above, or has held, controlled, or maintained any such account, document, electronically stored information, or asset at any time since January 1, 2010, and such financial or brokerage institution, business entity,

1    electronic data host, or person shall respond to such subpoena

2    within three (3) business days after service.

3    **VIII.  FINANCIAL STATEMENTS AND ACCOUNTING**

4    **IT IS FURTHER ORDERED** that each Defendant, within three (3)

5    business days of service of this Order, shall prepare and deliver to counsel for the

6    FTC:

7    A.    For the Individual Defendant, a completed financial statement

8    accurate as of the date of service of this Order upon such Defendant on the form

9    of Attachment A to this Order captioned "Financial Statement of Individual

10   Defendant;"

11   B.    For each Corporate Defendant, a completed financial statement

12   accurate as of the date of service of this Order upon such Defendant in the form

13   of Attachment B to this Order captioned "Financial Statement of Corporate

14   Defendant;" and

15   C.    For all Defendants, a list of all officers and directors of each

16   Corporate Defendant and all other individuals or entities with authority to direct

17   the operations of each Corporate Defendant or withdraw money from the account

18   of each Corporate Defendant.

19   **IX.  CONSUMER CREDIT REPORTS**

20   **IT IS FURTHER ORDERED** that pursuant to Section 604(1) of the Fair

21   Credit Reporting Act, 15 U.S.C. § 1681b(1), any consumer reporting agency may

22   furnish to the FTC a consumer report concerning any Defendant.

23

24

25

26

27

28

## X.  APPOINTMENT OF TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Peter S. Davis is appointed Receiver for the business activities of Receivership Defendants with the full power of an equity receiver.  The Temporary Receiver shall be an agent of this Court and solely an agent of this Court in acting as Temporary Receiver under this Order.  The Temporary Receiver shall be accountable directly to this Court.

## XI.  DUTIES AND AUTHORITY OF RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver is directed and authorized to accomplish the following:

A.      Assume full control of the Receivership Defendants by removing, as the Temporary Receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of any of the Receivership Defendants, including any named Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

B.      Take exclusive custody, control, and possession of all assets, documents, and electronically stored information of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated.  The Temporary Receiver shall have full power to divert mail and to sue for, collect, receive, take into possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants.  *Provided*, *however*, that the Temporary Receiver shall not attempt to collect or receive any amount from a consumer if the Temporary Receiver believes the consumer was a victim of the unlawful conduct alleged in the Complaint in this matter;

C.      Take all steps necessary to secure the business premises of the Receivership Defendants.  Such steps may include, but are not limited to, the following, as the Temporary Receiver deems necessary or advisable: (1) serving and filing this Order; (2) completing a written inventory of all Receivership assets;

(3) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, social security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent, and all computer hardware and software passwords; (4) videotaping and/or photographing all portions of the location; (5) securing the location by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at that location; (6) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Temporary Receiver with proof of identification, and to demonstrate to the satisfaction of the Temporary Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants; and (7) requiring all employees, independent contractors, and consultants of the Receivership Defendants to complete a questionnaire submitted by the Temporary Receiver;

B.    Conserve, hold, and manage all Receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

C.    Liquidate any and all securities or commodities owned by or for the benefit of the Receivership Defendants as the Receiver deems to be advisable or necessary;

D.    Enter into contracts and purchase insurance as the Temporary Receiver deems to be advisable or necessary;

E.    Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

F.      Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Temporary Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

G.      Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Temporary Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

H.      Make payments and disbursements from the Receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Temporary Receiver shall apply to the Court for prior approval of any payment of any debt or obligation incurred by the Receivership Defendants prior to the date of entry of this Order, except payments that the Temporary Receiver deems necessary or advisable to secure assets of the Receivership Defendants, such as rental payments;

I.      Determine and implement measures to ensure that the Receivership Defendants comply with, and prevent violations of, this Order and all other applicable laws, including, but not limited to, revising sales materials and implementing monitoring procedures;

J.      Institute, compromise, adjust, appear in, intervene in, or become party to such actions or proceedings in state, federal, or foreign courts that the Temporary Receiver deems necessary and advisable to preserve or recover the assets of the Receivership Defendants, or that the Temporary Receiver deems necessary and advisable to carry out the Receiver's mandate under this Order;

K.      Defend, compromise, adjust, or otherwise dispose of any or all actions or proceedings instituted in the past or in the future against the Temporary Receiver in his role as Temporary Receiver, or against the Receivership Defendants, that the Temporary Receiver deems necessary and advisable to preserve the assets of the Receivership Defendants or that the Temporary Receiver

1    deems necessary and advisable to carry out the Temporary Receiver's mandate
2    under this Order;

3         L.    Continue and conduct the business of the Receivership Defendants
4    in such manner, to such extent, and for such duration as the Temporary Receiver
5    may in good faith deem to be necessary or appropriate to operate the business
6    profitably and lawfully, if at all; *provided*, *however*, that the continuation and
7    conduct of the business shall be conditioned upon the Temporary Receiver's good
8    faith determination that the businesses can be lawfully operated at a profit using
9    the assets of the receivership estate;

10        M.    Take depositions and issue subpoenas to obtain documents and
11   records pertaining to the receivership estate and compliance with this Order.
12   Subpoenas may be served by agents or attorneys of the Temporary Receiver and
13   by agents of any process server retained by the Temporary Receiver;

14        N.    Open one or more bank accounts in Arizona as designated
15   depositories for funds of the Receivership Defendants.  The Temporary Receiver
16   shall deposit all funds of the Receivership Defendants in such a designated
17   account and shall make all payments and disbursements from the receivership
18   estate from such account(s);

19        O.    Maintain accurate records of all receipts and expenditures that he
20   makes as Temporary Receiver;

21        P.    Cooperate with reasonable requests for information or assistance
22   from any state or federal law enforcement agency; and

23        Q.    Maintain the chain of custody of all of Defendants' records in his
24   possession, pursuant to procedures to be established in writing with the approval
25   of the FTC.

26   **XII.  IMMEDIATE ACCESS TO BUSINESS PREMISES AND**
                        **RECORDS**
27
28        **IT IS FURTHER ORDERED** that Defendants and their officers,
     directors, agents, servants, employees, attorneys, and all other persons, directly or

1    indirectly, in whole or in part, under their control, and all other persons in active

2    concert or participation with them who receive actual notice of this Order by

3    personal service, or otherwise, whether acting directly or through any corporation,

4    subsidiary, division, or device, shall:

5         A.    Immediately identify to FTC's counsel and the Temporary Receiver:

6    (1)    all of Defendants' business premises; (2) any non-residence premises

7    where any Defendant conducts business, sales operations, or customer service

8    operations; (3) any non-residence premises where documents or electronically

9    stored information related to the business, sales operations, or customer service

10   operations of any Defendant are hosted, stored, or otherwise maintained,

11   including, but not limited to, the name and location of any electronic data hosts;

12   and (4) any non-residence premises where assets belonging to any Defendant are

13   stored or maintained;

14        B.    Allow the FTC and the Temporary Receiver, and their respective

15   representatives, agents, attorneys, investigators, paralegals, contractors, or

16   assistants, immediate access to: (1) all of the Defendants' business premises,

17   including, but not limited to: (a) 2655 W. Guadalupe Rd., Suite 9, Mesa, Arizona

18   85202, and such other business locations that are wholly or partially owned,

19   rented, leased, or under the temporary or permanent control of any Defendant; (2)

20   any other premises where the Defendants conduct business, sales operations, or

21   customer service operations; (3) any premises where documents related to the

22   Defendants' businesses are stored or maintained; (4) any premises where assets

23   belonging to any Defendant are stored or maintained; and (5) any documents

24   located at any of the locations described in this Section;

25        C.    Provide the FTC and the Temporary Receiver, and their respective

26   representatives, agents, attorneys, investigators, paralegals, contractors, or

27   assistants, with any necessary means of access to, copying of, and forensic

28   imaging of documents or electronically stored information, including, without

limitation, the locations of Receivership Defendants' business premises, keys and

combinations to business premises locks, computer access codes of all computers used to conduct Receivership Defendants' business, access to (including, but not limited to, execution of any documents necessary for access to and forensic imaging of) any data stored, hosted, or otherwise maintained by an electronic data host, and storage area access information;

D.     The FTC and the Temporary Receiver are authorized to employ the assistance of law enforcement officers, including, but not limited to, the United States Postal Inspection Service, Internal Revenue Service, Federal Bureau of Investigation, and local police to effect service, to implement peacefully the provisions of this Order, and to keep the peace.  The Temporary Receiver shall allow the FTC and its representatives, agents, contractors, or assistants into the premises and facilities described in this Section to inspect, inventory, image, and copy documents or electronically stored information relevant to any matter contained in this Order.  Counsel for the FTC and the Temporary Receiver may exclude Defendants and their agents and employees from the business premises and facilities during the immediate access.  No one shall interfere with the FTC's or Temporary Receiver's inspection of the Defendants' premises or documents;

E.     The Temporary Receiver and the FTC shall have the right to remove any documents related to Defendants' business practices from the premises in order that they may be inspected, inventoried, and copied.  The materials so removed shall be returned within five (5) business days of completing said inventory and copying.  If any property, records, documents, or computer files relating to the Receivership Defendants' finances or business practices are located in the residence of any Defendant or are otherwise in the custody or control of any Defendant, then such Defendant shall produce them to the Temporary Receiver within twenty-four (24) hours of service of this Order.  In order to prevent the destruction of computer data, the Temporary Receiver shall isolate all computers from outside access.  The FTC's and the Temporary Receiver's representatives may also photograph and videotape the inside and outside of all premises to which

they are permitted access by this Order, and all documents and other items found on such premises;

F.     The FTC's access to the Defendants' documents pursuant to this provision shall not provide grounds for any Defendant to object to any subsequent request for documents served by the FTC; and

G.     The Temporary Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access.

## XIII.  COOPERATION WITH TEMPORARY RECEIVER

**IT IS FURTHER ORDERED** that Defendants, and their officers, agents, directors, servants, employees, attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order by personal service, or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, are hereby temporarily restrained and enjoined from:

A.     Failing to fully cooperate with and assist the Temporary Receiver. Defendants' cooperation and assistance shall include, but not be limited to: (1) providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority and discharging the responsibilities of the Temporary Receiver under this Order, including, but not limited to, allowing the Temporary Receiver to inspect documents and assets and to partition office space; (2) providing any username or password and executing any documents required to access any computer or electronic files in any medium, including, but not limited to, electronically stored information stored, hosted or otherwise maintained by an electronic data host; and (3) advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Temporary Receiver; and

B.     Transacting any of the business of the Receivership Defendants;

C.     Destroying, secreting, erasing, mutilating, defacing, concealing, altering, transferring or otherwise disposing of, in any manner, directly or

1    indirectly, any documents, electronically stored information, or equipment of the

2    Receivership Defendants, including, but not limited to, contracts, agreements,

3    consumer files, consumer lists, consumer addresses and telephone numbers,

4    correspondence, advertisements, brochures, sales material, sales presentations,

5    documents evidencing or referring to Defendants' services, training materials,

6    scripts, data, computer tapes, disks, external storage devices, or other

7    computerized records, books, written or printed records, handwritten notes,

8    telephone logs, "verification" or "compliance" tapes or other audio or video tape

9    recordings, receipt books, invoices, postal receipts, ledgers, personal and business

10   canceled checks and check registers, bank statements, appointment books, copies

11   of federal, state, or local business or personal income or property tax returns,

12   photographs, mobile devices, electronic storage media, accessories, and any other

13   documents, records, or equipment of any kind that relate to the business practices

14   or business or personal finances of the Receivership Defendants or any other

15   entity directly or indirectly under the control of the Receivership Defendants;

16       D.    Transferring, receiving, altering, selling, encumbering, pledging,

17   assigning, liquidating, or otherwise disposing of any assets owned, controlled, or

18   in the possession or custody of, or in which an interest is held or claimed by, the

19   Receivership Defendants or the Temporary Receiver;

20       E.    Excusing debts owed to the Receivership Defendants;

21       F.    Failing to notify the Temporary Receiver of any asset, including

22   accounts, of a Receivership Defendant held in any name other than the name of

23   the Receivership Defendant, or by any person or entity other than the Receivership

24   Defendant, or failing to provide any assistance or information requested by the

25   Temporary Receiver in connection with obtaining possession, custody, or control

26   of such assets;

27       G.    Failing to create and maintain books, records, and accounts which,

28   in reasonable detail, accurately, fairly, and completely reflect the incomes, assets,

1  disbursements, transactions, and use of monies by the Defendants or any other

2  entity directly or indirectly under the control of the Defendants;

3      H.    Doing any act or refraining from any act whatsoever to interfere

4  with the Temporary Receiver's taking custody, control, possession, or managing

5  of the assets or documents subject to this Receivership; or to harass or to interfere

6  with the Temporary Receiver in any way; or to interfere in any manner with the

7  exclusive jurisdiction of this Court over the assets or documents of the

8  Receivership Defendants; or to refuse to cooperate with the Temporary Receiver

9  or the Temporary Receiver's duly authorized agents in the exercise of their duties

10 or authority under any Order of this Court; and

11     I.    Filing, or causing to be filed, any petition on behalf of the

12 Receivership Defendants for relief under the United States Bankruptcy Code, 11

13 U.S.C. § 101 *et seq.*, without prior permission from this Court.

14         **XIV.  DELIVERY OF RECEIVERSHIP PROPERTY**

15     **IT IS FURTHER ORDERED** that immediately upon service of this Order

16 upon them or upon their otherwise obtaining actual knowledge of this Order, or

17 within a period permitted by the Temporary Receiver, Defendants and any other

18 person or entity, including, but not limited to, financial institutions and electronic

19 data hosts, shall transfer or deliver access to, possession, custody, and control of

20 the following to the Temporary Receiver:

21     A.    All assets of the Receivership Defendants;

22     B.    All documents and electronically stored information of the

23 Receivership Defendants, including, but not limited to, books and records of

24 accounts, all financial and accounting records, balance sheets, income statements,

25 bank records (including monthly statements, canceled checks, records of wire

26 transfers, records of ACH transactions, and check registers), client or customer

27 lists, title documents and other papers;

28     C.    All assets belonging to members of the public now held by the

Receivership Defendants;

D.      All keys, computer and other passwords, user names, entry codes, combinations to locks required to open or gain or secure access to any assets or documents of the Receivership Defendants, wherever located, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, or other property; and

E.      Information identifying the accounts, employees, properties, or other assets or obligations of the Receivership Defendants; and

F.      In the event any person or entity fails to deliver or transfer immediately any asset or otherwise fails to comply with any provision of this Section XIV, the Temporary Receiver may file *ex parte* with the Court an Affidavit of Non-Compliance regarding the failure.  Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and direct the United States Marshal or any sheriff or deputy sheriff of any county to seize the asset, document, or other thing and to deliver it to the Temporary Receiver.

## XV.  COMPENSATION FOR RECEIVER

**IT IS FURTHER ORDERED** that the Temporary Receiver and all personnel hired by the Temporary Receiver as herein authorized, including counsel to the Temporary Receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this Order, and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, the Receivership Defendants.  The Temporary Receiver shall file with the Court and serve on the parties periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this Order.  The Temporary Receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the Court.

## XVI.  RECEIVER'S REPORTS

**IT IS FURTHER ORDERED** that the Temporary Receiver shall report to this Court on or before the date set for the hearing to Show Cause regarding the Preliminary Injunction, regarding: (1) the steps taken by the Temporary Receiver to implement the terms of this Order; (2) the value of all liquidated and unliquidated assets of the Receivership Defendants; (3) the sum of all liabilities of the Receivership Defendants; (4) the steps the Temporary Receiver intends to take in the future to:  (a) prevent any diminution in the value of assets of the Receivership Defendants, (b) pursue receivership assets from third parties, and (c) adjust the liabilities of the Receivership Defendants, if appropriate; (5) the Receiver's assessment of whether the business can be operated in compliance with this Order; and (6) any other matters that the Temporary Receiver believes should be brought to the Court's attention.  *Provided, however*, if any of the required information would hinder the Temporary Receiver's ability to pursue receivership assets, the portions of the Temporary Receiver's report containing such information may be filed under seal and not served on the parties.

1     ## XVII.  WITHDRAWAL OF TEMPORARY RECEIVER

2           **IT IS FURTHER ORDERED** that should the Temporary Receiver wish

3     to withdraw from his or her respective appointments or representations and apply

4     for payment of professional fees and costs at any time after the date of this Order,

5     the Temporary Receiver must send written notice seven (7) days prior to the date

6     of the intended withdrawal to the Court and to the parties along with a written

7     report reflecting the Temporary Receiver's work, findings, and recommendations,

8     as well as an accounting for all funds and assets in possession or control of the

9     Temporary Receiver.  The Temporary Receiver shall be deemed closed upon

10    approval by the Court of withdrawal.  The Court will retain jurisdiction to

11    consider the fee applications, report, and accounting submitted by the Receiver

12    and the professionals.  The written notice shall include an interim report indicating

13    the Temporary Receiver's actions and reflect the knowledge gained along with the

14    fee applications of the Temporary Receiver and his professionals.  The report shall

15    also contain the Temporary Receiver's recommendations, if any.

16    ## XVIII.  TEMPORARY RECEIVER'S BOND/LIABILITY

17          **IT IS FURTHER ORDERED** that no bond shall be required in

18    connection with the appointment of the Temporary Receiver.  Except for an act

19    of gross negligence, the Temporary Receiver and the professionals shall not be

20    liable for any loss or damage incurred by any of the Defendants, their officers,

21    agents, servants, employees, and attorneys or any other person, by reason of any

22    act performed or omitted to be performed by the Temporary Receiver and the

23    professionals in connection with the discharge of his or her duties and

24    responsibilities, including, but not limited to, their withdrawal from the case under

25    Section XVII.

26

27

28

**XIX. PROHIBITION ON RELEASE OF CONSUMER INFORMATION**

**IT IS FURTHER ORDERED** that, except as required by a law enforcement agency, law, regulation, or court order, Defendants, and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service, facsimile transmission, email, or otherwise, are temporarily restrained and enjoined from disclosing, using, or benefitting from consumer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a consumer's account (including a credit card, bank account, or other financial account), of any person which any Defendant obtained prior to entry of this Order in connection with any mortgage assistance relief service.

**XX. STAY OF ACTIONS**

**IT IS FURTHER ORDERED** that:

A.    Except by leave of this Court, during pendency of the Receivership ordered herein, Defendants and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership Defendants, any of their subsidiaries, affiliates, partnerships, assets, documents, or the Temporary Receiver or the Temporary Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

1.    Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

2.    Accelerating the due date of any obligation or claimed obligation; filing or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such

acts are part of a judicial proceeding, are acts of self-help, or otherwise;

3.       Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

4.       Doing any act or thing whatsoever to interfere with the Temporary Receiver taking custody, control, possession, or management of the assets or documents subject to this Receivership, or to harass or interfere with the Temporary Receiver in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants;

B.     This Section does not stay:

1.       The commencement or continuation of a criminal action or proceeding;

2.       The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

3.       The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

4.       The issuance to a Receivership Defendant of a notice of tax deficiency; and

C.     Except as otherwise provided in this Order, all persons and entities in need of documentation from the Temporary Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the

1   Receiver, and, if such request has not been responded to within thirty (30) days of

2   receipt by the Temporary Receiver, any such person or entity may thereafter seek

3   an Order of this Court with regard to the relief requested.

4              **XXI.  LIMITED EXPEDITED DISCOVERY**

5        **IT IS FURTHER ORDERED** that the FTC is granted leave to conduct

6   certain expedited discovery, and that, commencing with the time and date of this

7   Order, in lieu of the time periods, notice provisions, and other requirements of

8   Rules 26, 30, 34, and 45 of the Federal Rules of Civil Procedure, and applicable

9   Local Rules, the FTC is granted leave to:

10        A.     Take the deposition, on three (3) days' notice, of any person or

11   entity, whether or not a party, for the purpose of discovering: (1) the nature,

12   location, status, and extent of assets of Defendants or their affiliates or

13   subsidiaries; (2) the nature and location of documents and business records of

14   Defendants or their affiliates or subsidiaries; and (3) compliance with this Order.

15   The limitations and conditions set forth in Fed. R. Civ. P. 30(a)(2)(B) and

16   31(a)(2)(B) regarding subsequent depositions shall not apply to depositions taken

17   pursuant to this Section.  In addition, any such depositions taken pursuant to this

18   Section shall not be counted toward the ten-deposition limit set forth in Fed. R.

19   Civ. P. 30(a)(2)(A)(I) and 31(a)(2)(A)(I) and shall not preclude the FTC from

20   subsequently deposing the same person or entity in accordance with the Federal

21   Rules of Civil Procedure.  Service of discovery upon a party, taken pursuant to

22   this Section, shall be sufficient if made by facsimile, email, or by overnight

23   delivery.  Any deposition taken pursuant to this Subsection that has not been

24   reviewed and signed by the deponent may be used by any party for purposes of the

25   preliminary injunction hearing;

26        B.     Serve upon parties requests for production of documents or

27   inspection that require production or inspection within three (3) calendar days of

28   service, and may serve subpoenas upon non-parties that direct production or

inspection within five (5) calendar days of service, for the purpose of discovering:

(1) the nature, location, status, and extent of assets of Defendants or their affiliates or subsidiaries; (2) the nature and location of documents and business records of Defendants or their affiliates or subsidiaries; and (3) compliance with this Order, *provided that* twenty-four (24) hours' notice shall be deemed sufficient for the production of any such documents that are maintained or stored only as electronic data;

      C.     Serve deposition notices and other discovery requests upon the parties to this action by facsimile or overnight courier, and take depositions by telephone or other remote electronic means; and

      D.     If a Defendant fails to appear for a properly noticed deposition or fails to comply with a request for production or inspection, seek to prohibit that Defendant from introducing evidence at any subsequent hearing.

## XXII.  SERVICE OF PLEADINGS

**IT IS FURTHER ORDERED** that Defendants shall file any answering affidavits, pleadings, or legal memoranda with the Court and serve the same on counsel for the FTC no later than five (5) business days prior to the preliminary injunction hearing in this matter.  The FTC may file responsive or supplemental pleadings, materials, affidavits, or memoranda with the Court and serve the same on counsel for Defendants no later than one (1) business day prior to the preliminary injunction hearing in this matter.  *Provided that* service shall be performed by personal or overnight delivery, facsimile, or email, and documents shall be delivered so that they shall be received by the other parties no later than 4 p.m. (Pacific Time) on the appropriate dates listed in this Section.

1

## XXIII.  LIVE TESTIMONY; WITNESS IDENTIFICATION

2

**IT IS FURTHER ORDERED** that the question of whether this Court

3

should enter a preliminary injunction pursuant to Rule 65 of the Federal Rules of

4

Civil Procedure enjoining the Defendants during the pendency of this action shall

5

be resolved on the pleadings, declarations, exhibits, and memoranda filed by, and

6

oral argument of, the parties.  Live testimony shall be heard only on further order

7

of this Court on motion filed with the Court and served on counsel for the other

8

parties at least five (5) business days prior to the preliminary injunction hearing

9

in this matter.  Such motion shall set forth the name, address, and telephone

10

number of each proposed witness, a detailed summary or affidavit disclosing the

11

substance of each proposed witness' expected testimony, and an explanation of

12

why the taking of live testimony would be helpful to this Court.  Any papers

13

opposing a timely motion to present live testimony or to present live testimony in

14

response to live testimony to be presented by another party shall be filed with this

15

Court and served on the other parties at least three (3) business days prior to the

16

preliminary injunction hearing in this matter.  *Provided that* service shall be

17

performed by personal or overnight delivery, facsimile, or email, and documents

18

shall be delivered so that they shall be received by the other parties no later than

19

4 p.m. (Pacific Time) on the appropriate dates listed in this Section.  *Provided*

20

*further,* however, that an evidentiary hearing on the Commission's request for a

21

preliminary injunction is not necessary unless Defendants demonstrate that they

22

have, and intend to introduce, evidence that raises a genuine material factual issue.

23

## XXIV.  DEFENDANTS' DUTY TO DISTRIBUTE ORDER

24

**IT IS FURTHER ORDERED** that Defendants shall immediately provide

25

a copy of this Order to each affiliate, subsidiary, division, sales entity, successor,

26

assign, officer, director, employee, independent contractor, client company,

27

electronic data host, agent, attorney, spouse, and representative of Defendants and

28

shall, within three (3) calendar days from the date of entry of this Order, provide

counsel for the FTC with a sworn statement that:  (a) confirms that Defendants

have provided copies of the Order as required by this Section, and (b) lists the names and addresses of each entity or person to whom Defendants provided a copy of the Order.  Furthermore, Defendants shall not take any action that would encourage officers, agents, directors, employees, salespersons, independent contractors, attorneys, subsidiaries, affiliates, successors, assigns, or other persons or entities in active concert or participation with Defendants to disregard this Order or believe that they are not bound by its provisions.

### XXV.  DURATION OF TEMPORARY RESTRAINING ORDER

**IT IS FURTHER ORDERED** that the Temporary Restraining Order granted herein shall expire on the 5th day of November, 2012, at 3:00 p.m. (Mountain Standard Time), unless within such time, the Order, for good cause shown, is extended with the consent of the parties, or for an additional period not to exceed fourteen (14) calendar days, or unless it is further extended pursuant to Federal Rule of Civil Procedure 65.

### XXVI.  ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT ISSUE

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 65(b), each of the Defendants shall appear before this Court in Courtroom 506 on the 31st day of October, 2012, at 2:00 p.m. (Mountain Standard Time), to show cause, if there is any, why this Court should not enter a preliminary injunction enjoining the violations of law alleged in the FTC's Complaint, continuing the freeze of their assets, and imposing such additional relief as may be appropriate.

### XXVII.  CORRESPONDENCE WITH PLAINTIFF

**IT IS FURTHER ORDERED** that, for the purposes of this Order, because mail addressed to the FTC is subject to delay due to heightened security screening, all correspondence and service of pleadings on Plaintiff shall be sent either via electronic submission or via Federal Express to:

Eleanor Durham
Federal Trade Commission

1   915 2nd Ave., Suite 2896
    Seattle, WA 98174
2   edurham@ftc.gov
    with a copy to:
3   Laura M. Solis
    Federal Trade Commission
4   915 2nd Ave., Suite 2896
    Seattle, WA 98174
5   lsolis@ftc.gov

6   ## XXVIII.  SERVICE OF THIS ORDER

7   **IT IS FURTHER ORDERED** that:

8         A.      Copies of this Order may be served by facsimile transmission, email,

9   personal or overnight delivery, or U.S. Mail, by agents and employees of the FTC

10  or any state or federal law enforcement agency or by private process server, upon

11  any financial institution or other entity or person that may have possession,

12  custody, or control of any documents or assets of any Defendant, or that may

13  otherwise be subject to any provision of this Order.  Service upon any branch or

14  office of any financial institution shall effect service upon the entire financial

15  institution; and

16        B.      For purposes of service on anyone in possession of records, assets,

17  property or property rights, actual notice of this Order shall be deemed complete

18  upon notification by any means including, but not limited to notice by service by

19  facsimile transmission of the first page, Paragraphs VI, VII, and XIV, and the last

20  page of this Order, provided that notice is followed within five (5) business days

21  by delivery of a complete copy of this Order.

22

23

24

25

26

27

28

# XXIX.  RETENTION OF JURISDICTION

**IT IS FINALLY ORDERED** that this Court shall retain jurisdiction of this matter for all purposes of construction, modification, and enforcement of this Order.

DATED this 22nd day of October, 2012.

_____
James A. Teilborg
United States District Judge

Copies to Only: Counsel for Plaintiff